UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

DONALD BURNS,

    Plaintiff,
v.

TOWN OF PALM BEACH, a
Florida Municipal corporation,

    Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

1.    Donald Burns ("Burns") sues the Town of Palm Beach, Palm Beach County, Florida, for declaratory and injunctive relief and damages. He seeks to declare unconstitutional and enjoin Sections 18-146 and 18-205 of the Ordinances of the Town of Palm Beach (the "Architectural Code") as being arbitrary, irrational (both on their face and as applied), and violative of the due process and equal protection clauses of the United States Constitution as well as the First Amendment. Copies of Sections 18-146 and 18-205 are **Exhibits A** and **B** respectively to this Complaint.

**JURISDICTION**

2.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and arising directly under the Constitution and laws of the United States. This action seeks a declaratory judgment pursuant to 28 U.S.C. §2201, and injunctive relief, and damages to redress the deprivation by the Town, under color of law, of the rights, privileges and immunities secured to Burns by the Constitution and laws of the United States, including but not limited to, rights secured by the First,

Fifth, and Fifteenth Amendments to the United States Constitution. Jurisdiction over these claims is based upon 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. §139l(b) because the Town is located in this district and because the events or omissions giving rise to Burns' claims occurred in this judicial district. The property affected by the codes is also situated in this judicial district.

## PARTIES

4. Donald Burns resides on the property he owns located at 1021 N. Ocean Boulevard in the Town of Palm Beach and sought permission to construct a new home on that property.

5. The Town of Palm Beach is a municipal corporation organized under the laws of the State of Florida. The Town, acting through its Town Council and Architectural Commission ("ARCOM"), denied that permission. The actions complained of below were taken under color of state law in violation of 42 U.S.C. § 1983.

## FACTS

6. Burns has lived at 1021 N. Ocean Boulevard for 18 years, and intends to live there long into the future.

7. Burns' saga in trying to build a new home on his lot began in 2013. At that time, he desired to renovate his existing house in order to better reflect current tastes and long-term needs.

8. Burns has extensive past experience with building and remodeling homes and buildings for his personal use. Thus, he familiarized himself with all of the Town of Palm Beach and Florida Department of Environmental Protection Agency Regulations and Zoning Codes that might impact a proposed new home construction at 1021 N. Ocean Boulevard.

9. Burns found two conflicts between the written zoning codes and how the Town was applying them. He, along with an attorney and an architect, met with Paul Castro, the Zoning Administrator of the Planning, Zoning, and Building Department of the Town of Palm Beach.

#53215810_v3

10. Burns found a conflict between the written Town of Palm Beach building codes and the interpretation of the same codes by the Planning, Zoning, and Building Department regarding how to measure lot square footage. Written codes called for measuring an ocean front lot square footage to the Town Bulkhead Line. Notwithstanding the plain language of the ordinance, the Town measured square footage to any existing seawall. In February of 2014, the Town's attorney advised that it could not provide assurances that the Town would not be vulnerable to a lawsuit under Florida's Bert J. Harris, Jr. Act (providing damages for certain takings), if the Town amended the existing Code language to conform with its practices, that is measuring only to an existing seawall. Accordingly, the Town Council decided to keep the code language as it was, and measurements should be made from the bulkhead line, and not to an existing seawall.

11. Burns also found a second conflict between the plain language of the building codes and the Town's actual practice. The Town's Planning, Zoning, and Building officials required new ocean front homes to be located no farther eastward than the average eastward position of existing abutting structures. However, the written code called for applying the eastward movement limit only in the event that a new application requested a variance for a Point of Measurement over 17.4' and eastward movement only limited by a 15' setback from an existing bulkhead. Again, when this discrepancy was brought to the Town, it affirmatively chose to apply such limits only to applications seeking a variance for a Point of Measurement above 17.4'. Thus, the pertinent ocean-side setback for 1021 N. Ocean Boulevard is 15' from the bulkhead.

12. Having resolved those zoning issues with the Town, in 2014 Burns engaged a design team to design a new home to replace his existing home at 1021 N. Ocean Boulevard.

13. On December 9, 2014, Burns submitted his plans for the Town Council's approval of a Special Exception with Site Plan Review, which was required because his lot is 100' wide, instead of the required 125' wide. The application cost was $1,000.00.

14. Unbeknownst to Burns, the neighbor to the North had engaged in a campaign of opposition, recruiting other neighbors to oppose Burns' new home. Burns only learned of the opposition two days before the scheduled February 11, 2015 hearing before the Town Council.

15. Burns attempted to negotiate issues with his neighbors, but ultimately instead tried to sell the existing home at 1021 North Ocean Boulevard throughout most of 2015, in order to avoid conflicts with his neighbors. However, the existing home was not sold.

16. Therefore, on November 12, 2015, Burns submitted a second application for the Town Council's approval of a Special Exception with Site Plan Review. This time, the application cost was $1,500.00. In addition to the application cost, the application itself required extensive supporting materials describing the property and architectural plans and site plans of the proposed work. These supporting materials cost thousands of dollars to prepare.

17. The proposed building design would demolish the existing 10,063 square-foot house, which is non-conforming to zoning codes. The original plan for the new home would have been a two-story residence atop a basement built into the dune. The home would have 14,061 square feet of habitable space. The basement would contain a garage, laundry, all the mechanical equipment, wine storage and a steam room. Pursuant to Florida Department of Environmental Protection regulations, there is no habitable space in the basement.

18. The criteria for site plan approval by the Town Council are set forth in § 134-329, Code of Ordinances, Town of Palm Beach, Florida ("Code"), and a copy is attached hereto as **Exhibit C**.

19. The Town Council was obligated to decide Burns' application for Special Exception, but did not do so. There is no provision in the ordinance which authorizes the Town Council to defer making a decision. To the contrary, a decision on any application must be made within 30 days.

20. Contrary to the express terms of the ordinance, the Town Council refused to make a decision on the Special Exception application, and deferred action until after the Architectural

Commission ruled on an as-then not prepared or submitted application to the Architectural Commission.

21. Accordingly, Burn had his architect and other designers prepare detailed plans, renderings, and models of the proposed new house, which cost thousands of dollars more to prepare and submit.

22. The proposed home conformed to the Town's zoning codes more than the existing home.

23. No zoning variances were sought or needed for the proposed new home.

24. The plans provide for significant landscaping to the north and south property lines, where none exists today. The existing house encroaches into the required 15' side yard setbacks, in some areas as close as 9'; the proposed new home would maintain the required 15' setback and add a landscape buffer.

25. The original proposed rear setback would have been 48'10", where 15' is the zoning code's minimum. Later, in reaction to Architectural Commission and neighbors' comments about the desire to maintain site-lines across the beach-side yards, the house design was modified again to provide for a setback of 74 feet. The proposed eastward expansion of the house would have been lesser than the eastern movement of the neighbors at 1070 North Ocean Boulevard, two lots north, which only has a setback of 71.1 feet.

26. The height of the building would be below the maximum allowed by the zoning code; indeed, the new home would be lower than the existing house.

27. The Florida Department of Environmental Protection requires that the new house have a first floor 17.4 feet above sea level, to protect both neighbors and the new house. The existing house is less than 12' above sea level.

28.     The west-facing front of the house is sheltered from public view by a berm and a tall landscape buffer.  The second floor of the house is designed to pull farther away from the street, in order to mitigate its visual presence from the street.

29.     Burns amended the proposed home's plan several times, in an attempt to conform to the Architectural Commission's vague and subjective standards expressed at each public meeting.  For example, the total square footage of habitable space was reduced from 14,061 square feet to 12,837 square feet – which was a difference of less than 2,000 square feet between the existing house and the proposed house.

30.     The Architecture Commission ("ARCOM") criteria are different from the Special Exception criteria, and are contained in Code § 18-205.

31.     On September 28, 2016, ARCOM rejected the application, based on section 18-205(a)(4), (a)(6)(c-f), and (a)(8), denying the Plaintiff the right to build his new home, despite overwhelming evidence in favor of the application.

## COUNT I. FOURTEENTH AMENDMENT

32.     Sections 18-146 and 18-205 of the Code of the Town of Palm Beach deprive the Plaintiff of his rights to due process and equal protection of the law for the following reasons:

a)     The relevant provision of the sections at issue are vague, overbroad and fail to provide objective and verifiable standards. The use of the terms "taste," "charm," "beauty," "harmony," "aesthetic quality" in Section 18-146, as well as "excessively dissimilar" are subject to subjective and idiosyncratic application that, on their face, and as applied here deprive the plaintiff of the right to be fully informed of the standards for review of proposed plans for the use of his property.

b)     The provisions at issue also deny the Plaintiff equal protection of the laws because the historical applications of the challenged sections have had anomalous

results *vis-a-vis* the issuance of building permits in the Town of Palm Beach. Application of the vague and overbroad provisions have allowed dissimilar structures to be approved and constructed and denying the Plaintiff's structure constitutes a denial of the right to equal treatment under the law.

33. The denial of his Fifth and Fourteenth Amendment rights has also caused the Plaintiff damages resulting from the expense and planning costs for his home by virtue of the Town Council's and ARCOM's actions in rejecting approval of his home, the denial of his right to use his property, and the angst and delay suffered by him in seeking to obtain approval for the construction of his home under the challenged sections of the Town Code.

## **COUNT II. FIRST AMENDMENT**

34. Architecture and architectural design are forms of expression that are protected by the First Amendment.

35. Sections 18-146 and 18-205 improperly regulate protected forms of expression utilizing vague, overbroad, subjective, unverifiable, and irrational and arbitrary standards that deny and infringe the Plaintiff's right to expression under the First Amendment.

36. The denial of Plaintiff's First Amendment rights by the Defendant has caused him damages resulting from the expense in creating the architectural plans for his proposed home, the angst and delay suffered by virtue of having to traverse a permitting system which inhibited and then denied the freedom of expression embodied in his effort to exercise his First Amendment rights to architectural design and construction, and the denial of increased property value that would have resulted if Plaintiff had been allowed to build his new home.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that:

a) The Court declare Sections 18-146 and 18-205 unconstitutional on their face and/or as applied to the Plaintiff;

b) the Court preliminarily and permanently enjoin the operation of the ordinances, and/or preliminarily and permanently enjoin the Defendant from denying the Plaintiff the right to construct his home;

c) The Court award damages, attorneys' fees and costs to the Plaintiff; and

d) the Court grant such further relief as may be just and proper.

DATED this 13th day of October, 2017.

**HOLLAND & KNIGHT LLP**

s/ Jennifer A. Mansfield
Jennifer A. Mansfield,
Florida Bar No. 0186724
Primary: jennifer.mansfield@hklaw.com
Secondary: dawn.hewett@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiff*

#53215810_v3