UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:17-cv-81152-BLOOM/REINHART

DONALD BURNS,

      Plaintiff,

v.

TOWN OF PALM BEACH,
a Florida Municipal corporation,

      Defendant.

_____/

**DEFENDANT TOWN OF PALM BEACH'S RESPONSE TO
PLAINTIFF'S OBJECTIONS [D.E. 96]
TO REPORT AND RECOMMENDATION [D.E. 93]**

## I.      INTRODUCTION

It is important not to get "lost in the weeds" in applying First Amendment concepts to something other than pure speech or pure art. In the final analysis, this is a normal zoning case involving denial of architectural approval of an oversized house on an undersized lot because the massing was intrusive on the neighbors and out of character with the neighborhood.

The Magistrate correctly ruled that architectural design is not "pure speech" or "pure art" automatically entitled to First Amendment production without further analysis. He therefore conducted a review of cases involving either conduct or utilitarian objects alleged to be communicative in the constitutional sense. In such cases, the Court examines the "context" of the surrounding circumstances to determine if the conduct or utilitarian object is communicative in the constitutional sense and therefore entitled to First Amendment protection. Plaintiff offers no unique circumstances or other "context" to take this case out of the routine zoning setting.

In the zoning context (without First Amendment protection), the Eleventh Circuit has repeatedly instructed that it will not permit litigants to use the federal courts as zoning boards of review. *See Greenbrier Village, LLC v. Mountain Brook, City*, 345 F.3d 1258, 1261 (11th Cir. 2003) ("[Z]oning decisions, as a general rules, will not usually be found by a federal court to implicate constitutional guarantees…"); *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir.

1989) ("[F]ederal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions.").

## II.    ARGUMENT

### A.    Grant of Summary Judgment Before the Close of Discovery Is Proper. (Plaintiff's Objection Point II at p. 4)

This Court has broad discretion when reviewing a magistrate's report and recommendation and may ***decline*** to consider new evidence first raised in a party's objections. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). Here, Plaintiff does not offer new evidence, but asserts that the ruling is premature because he needed additional discovery.[1]  Under questioning by the Magistrate, Plaintiff conceded that any additional discovery would only pertain to his "as-applied" claims. [D.E. 90, Tr. at 3:18-25, 4:1-5, 5:6-10] And then it was only as a "back-up" strategy. "***If Your Honor were inclined to*** make a final determination on the as-applied, we would want to be able to complete discovery."[D.E. 90, Tr. at 5:21-23] Plaintiff is wrong for a number of reasons.

First, the "as applied" claims involve court review of how ARCOM applied the ordinances. Since there was a quasi judicial hearing below (and the full record was filed with the Town's Motion), the Court knows exactly how ARCOM applied the ordinances and on what evidence its decision was based. Discovery delving into the privileged thought processes of the quasi judicial panel is inappropriate. See Town Reply p. 9-10 [D.E. 45]

Also, the list of discovery items cited by Plaintiff are not true "discovery," but have always been available to Plaintiff. Plaintiff's Rule 56(d) Declaration [D.E. 41] referenced three categories of "discovery" allegedly needed – (a) transcripts of ARCOM meetings, (b) legislative

---

[1] Plaintiff also complains about the Town filing supplemental exhibits [D.E. 58] in May 2018. Obj. p. 2. The supplemental exhibits were in response to Plaintiff playing semantics in his initial Reply to the Summary Judgement Motion with the term "habitable space" when discussing the massing of his proposed structure. The Town's supplemental exhibits were nothing more than (a) Plaintiff's own appraisals showing actual square footages and (b) a "blow-up" of Site Calculations (which were part of the original ARCOM record, but were difficult to read). The existing house is 9,128 sq. ft.; the initial proposed structure was 25,198 sq. ft.; the modified proposed structure was 19,582 sq. ft. See Town Supplemental Memo at p. 2-3 [D.E. 60] This was offered to show that ARCOM's decision on the over-massing was not arbitrary. Plaintiff had ample opportunity to address this in his later briefs. See Plaintiff's Response [D.E. 82] and Plaintiff's Reply [D.E. 86].

history of Town ordinances and (c) expert testimony that architecture is art. The first two categories are publicly available on the Town's website which the Town advised in response to a request for production. [D.E. 56-2] The third category (expert testimony) is not "discovery" from the Town, but a matter of Plaintiff hiring his own expert to render an opinion. Plaintiff could have filed any or all of these in the eight months between November 2017 (when the Summary Judgment Motion was filed) and July 2018 (date of R&R).

Second, Plaintiff failed to demonstrate how this additional discovery would create a genuine issue of material fact. "Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of Rule 56[(d)] by presenting specific facts explaining the inability to make a substantive response." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012). A party may not "rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Wallace v. Brownwell-Pontiac-GMC, Co*., 703 F.2d 525, 527 (11th Cir. 1983).

Third, Plaintiff argues that "he is entitled to rely upon the Court's scheduling deadlines." (Obj. at 3) However, the mere fact that the discovery period is still open does not bar this Court from resolving a fully briefed summary judgment motion. S*ee Fla. Power & Light Co. v. Allis Chalmers Corp*., 893 F.2d 1313, 1316 (11th Cir. 1990). The Eleventh Circuit "***expect[s]*** that district judges will . . . ***rule on a motion for summary judgment at an early stage of the litigation*** . . . [if] a prompt decision will likely avoid significant unnecessary discovery." *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1188 (11th Cir. 2005).

Both parties delayed discovery pending summary judgment ruling expressly to save unnecessary discovery expenses. Plaintiff joined in representing that "in light of the voluminous public record[s] previously exchanged [and the] ***fact discovery in this case is limited***," ***the need for expensive expert discovery would be*** "***obviated, if not significantly reduced***, should the Court grant the Town's Motion in whole or in part." [D.E. 50, Joint Discovery Status Report at 2; DE 47, Joint Mot. Ext. Certain Pretrial Deadlines at ¶ 5].

Fourth, the Magistrate properly found that Plaintiff waived objection to summary judgment by responding to the Motion. "[A] party [who] has responded to a summary judgment motion … waives any option it may have had to proceed under Rule 56[d]." *Villa v. Bd. of Cty. Comm'rs of the Cty. of Arapahoe*, 931 F.2d 900, at *4 (10th Cir. 1991). See also *Washington v Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("Rule 56[d] is an *alternative* to a response

in opposition to summary judgment under Rule 56(e)…"). Contrary to Plaintiff's urgings, the intervening amendments re-ordering Rule 56 have not affected these holdings. See *Wright, Miller & Kane*, 10B FED. PRAC. & PROC. CIV. 3d § 2740 (4th ed. 2018) ("When Rule 56 was rewritten in 2010, those provisions were moved to a new subdivision (d), without any substantial change. Thus, precedent prior to 2010 citing Rule 56(f) is fully applicable to current Rule 56(d).").

### B.   The Magistrate Correctly Ruled on the First Amendment. (Plaintiff Objection Point III at p. 4-12)

Contrary to Plaintiff's assertion (Obj. at 4-5), the Magistrate did not (a) conclude that "the exterior design of a person's home has less expressive purpose than tee shirts and baseball caps sold by street vendors" (b) "equat[e] a home with merchandise or 'tangible objects'" or (c) overlook that this case concerns Plaintiff's home.

The Magistrate correctly ruled that the house was not "pure speech" or "pure art." See subsection (1) below. He therefore correctly conducted an analysis of "symbolic speech" cases. The reason for the Magistrate's reference to cases involving merchandise or other utilitarian objects is due to the dearth of judicial opinions dealing with the claim that residential architecture is protected by the First Amendment.[2]

Without appellate cases directly on point, the Magistrate analyzed two separate lines of First Amendment jurisprudence. These are: (1) expressive conduct and (2) expressive merchandise or other utilitarian objects. He concluded that the physical structure of a residence is more akin to an expressive object than it is to expressive conduct. The Eleventh Circuit has not been presented with an First Amendment cases involving symbolic objects. The Magistrate

---

[2] *Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 311 F. Supp. 2d 972, 1004 (D. Nev. 2004)) is one of the few reported decisions to have addressed whether to extend First Amendment protection to residential design. The district court **declined** to do so, which the Magistrate recognized. R&R at 25-26. See also *Mai Lee Le v. City of Citrus Heights*, 1999 WL 420153 (E.D. Cal. February 12, 1999) ("architectural, structural, and aesthetic factors" used to deny zoning approvals are "non-speech related reasons . . . which might **never** implicate First Amendment concerns.") Conversely, for almost a hundred years, courts at every level from the Districts to the Supreme have upheld aesthetic zoning regulations as a valid exercise of local government police power. *See* Town's Initial Memo at 4-5 & n.2 [DE 22]; Reply Memo at 5-6 [DE 45]; Supp. Memo at 15-16 [DE 81]; Second Supp. Memo at 38-39 [DE 81].

therefore appropriately looked to the "predominant purpose" analysis developed by the Second Circuit in *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006). He incorporated this into the *Holloman/Texas v. Johnson* two part test which has been applied by the Eleventh Circuit to expressive conduct as follows:

    (1)    Is the owner of the structure subjectively intending to communicate a message? *[Holloman/Texas v. Johnson]*

    (2)    Is the predominant purpose of the structure to communicate a message? *[Mastrovincenzo]*

    (3)    Is there a great likelihood that a reasonable person observing the structure in the context of the surrounding circumstances would understand it to be predominantly communicating some message, albeit not necessarily the particularized message intended by the owner? *[Holloman/Texas v. Johnson]*

Having concluded that architecture is not communicative in the constitutional sense, the Magistrate stopped the analysis and did not go on to the *O'Brien* four part test to determine if the First Amendment was violated.

1.    ***The Magistrate correctly ruled that Residential Architecture is Not Pure Speech or Pure Art.***

Plaintiff's core premise is that the design of his home is "pure art," which he asserts is like "pure speech," and therefore subject to strict scrutiny review. (Obj. p. 10) Taken to its logical end, Plaintiff's position would eradicate a local government's ability to effectively regulate any aesthetic quality of structures because such regulations would never survive strict scrutiny. Anyone could build anything within the box established by setback/height restrictions. A massive, windowless, cinderblock bunker painted pink and purple (conveying some individual's message) would surely pass strict scrutiny. This result jettisons all the worthy governmental goals which, for almost one hundred years, the courts recognize are advanced by aesthetic approval ordinances. Plaintiff offers no support for the proposition that a residential structure is "pure art," other than a 1975 law review article advocating for this. He is wrong.

The Magistrate correctly understood that not all "speech" is treated equally under the law. "Pure speech" is generally entitled to First Amendment protection, without further discussion and is traditionally judged by "strict scrutiny." However, where "speech" and "non-speech" elements are combined in the same course of conduct or in a utilitarian object, sufficiently

important governmental interests in regulating the non-speech element can outweigh the impact on the speech element. Government has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word. See generally *Spence v. Washington*, 418 U.S. 405 (1974), and *Texas v. Johnson*, 491 U.S. 397 (1989).

First Amendment protection "'as a general matter . . . means that government has no power to restrict expression because of its **message**, its **ideas**, its **subject matter**, or its **content**.'" *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 121 (2011) (quoting *Ashcroft v. American Civil Liberties Union*, 463 U.S. 60 (1983)). The First Amendment does not extend protection to conduct or utilitarian objects absent circumstances and in context which makes them "communicative in the constitutional sense." *Spence*, 418 U.S. at 409. Because "[i]t is possible to find some kernel of expression in almost every activity a person undertakes," *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), the Supreme Court has rejected the view that any conduct [or utilitarian object] can be labeled "speech" whenever the person engaging in the conduct intends to express an idea. Rather, First Amendment protections extend only to conduct that is "inherently expressive" in the constitutional sense. *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 597 U.S. 47, 65-66 (2006) ("*FAIR*"). In deciding whether conduct is "inherently expressive," the Court has described a two part test: (1) whether "'[a]n intent to convey a particularized messages was present, and (2) [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

When faced with a similar argument in the context of religious structures, the Third Circuit explained that if "every religious group that wanted to challenge a zoning regulation preventing them from constructing a house of worship could" claimed a violation of free speech, it would be "so astonishing that [the Third Circuit is] unaware of any court—or even law review article—that has suggested it." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 163 (3d Cir. 2002). Courts consistently analyze the constitutionality of zoning regulations limiting church construction under the Free Exercise Clause, not the Free Speech Clause. Id.

Even the advocates of First Amendment protection for architectural design concede that the courts recognize a distinction where "speech" or "art" is combined with other functional utilitarian purposes. *See, e.g.*, Annette B. Kohs, *Architectural Expression:  Police Process and the First Amendment*, 16 Urb. L. Ann 273, 289-90 (1979) (compiling cases):

> Each medium of expression is governed by its own rules.   Architectural expression cannot be accorded the same protection afforded "pure speech" since it necessarily involves some action apart from the expression.   Because architectural expression combines artistic expression with functional utility, it may not be perfectly analogous to other art forms or to "symbolic speech."

Plaintiff attempts to elevate his First Amendment claim by citing Supreme Court cases dealing with right to privacy and prohibition of unreasonable searches of a person's home. Plaintiff also relies on cases dealing with "pure speech" involving the display of a sign in a window of a house. Again this has nothing to do with a claim that a structure, in and of itself, is considered "communicative." Language about the sanctity of a "home" adds nothing to the First Amendment  analysis here.

**2.**     ***Second Criteria of the Magistrate's Test ("dominant purpose") was an Appropriate Inquiry.***

Plaintiff argues that it was improper for the Magistrate to incorporate Criteria (2) ("dominant purpose") into *Holloman/Texas v. Johnson* two prong test. He also asserts that no other Circuit Courts have done so. (Obj. p. 4-10) He is wrong on both scores.

First, Plaintiff concedes that the Court must examine the "context" and the "surrounding circumstances" to determine if a utilitarian object is "communicative" in the constitutional sense under the two prong *Holloman/Texas v. Johnson* test.  Criteria (2) ("dominant purpose") is part of the "context" and the "surrounding circumstances." Plaintiff was clear at the ARCOM hearing that the purpose of his application (the "context") was for him to live in the house. Never once during ARCOM proceedings did Plaintiff assert that he wanted to convey a message. In fact, he never mentioned any messages at all, until this lawsuit was filed. The Magistrate went beyond this undisputed fact and examined numerous factors about the application to determine that the house was not "communicative" in the constitutional sense. See R&R at 30-31 [D.E. 93]

It was perfectly appropriate for the Magistrate to consider the house's primary or dominant purpose. This situation can be compared to camping out in the context of a demonstration for the plight of the homeless, as opposed to camping out to enjoy nature. See *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984). The primary purpose of camping out in the first example is an expressive act; the latter is not. It was an appropriate inquiry to determine the "primary purpose" for building the house. The "context" is essential for the Court to decide if the house is "communicative" in the constitutional sense.

Next, other Circuits have adopted the *Mastrovincenzo* approach. The Fifth Circuit, in *Kleinman v. City of San Marcos*, 597 F.3d 323 (5th Cir. 2010), provided a well reasoned analysis of *Mastrovincenzo*. It applied the same "dominant purpose" principle to a First Amendment attack on a junk car ordinance. The Court also rejected a broad expansion of language found in *Hurley* that Plaintiff urges in this case – that any art form is entitled to First Amendment protection and is subject to strict scrutiny.

In *Mastrovincenzo*, the plaintiff displayed a wrecked Oldsmobile 88 as a cactus planter, colorfully painted and adorned with the words "make love not war" in front of his store. The Court stated:

> Seizing on *Hurley's* statement, the Second Circuit declared, in a case concerning New York City's street vendor regulations, that artworks including paintings, photographs, prints, and sculptures are "always" communicative and therefore entitled to "full First Amendment protection." *Bery v. City of New York,* 97 F.3d 689, 696 (2d Cir. 1996). Despite this broad language, the *Bery* court held only that the ordinance's application to vendors of those works did not stand up to intermediate scrutiny. *Id.* Further, the court reasoned that, because the crafts of the jeweler, the potter, and the silversmith are only sometimes "expressive," the constitutional protection afforded those categories of works must be determined on a case-by-case basis. *Id.*
>
> *   *   *
>
> Subsequently, the Second Circuit grappled with *Bery's* implication when vendors of T-shirts and ballcaps decorated with "graffiti art" sought an exemption from the same New York City ordinance. *Mastrovincenzo v. City of New York,* 435 F.3d 78 (2d Cir. 2006). The court narrowed *Bery's* broad dictum: "To say that the First Amendment protects the sale or dissemination of all objects ranging from 'totem poles' to television sets does not take us far in trying to articulate or understand a jurisprudence of ordered liberty; indeed, it would entirely drain the First Amendment of meaning." *Id* at 92.
>
> *   *   *
>
> We share the *Mastrovincenzo* court's skepticism that the heavy machinery of the First Amendment is to be deployed in every case involving visual non-speech expression. Protected expression takes many forms, but *Hurley's* reference to works of fine art did not sweep so broadly as to require a judicially crafted hierarchy of artistic expression. By analyzing the artist-vendors' rights under intermediate scrutiny, the *Bery* court effectively conceded as much.
>
> *   *   *

8

> Irrespective of the intentions of its creators or Planet K's owner, the car-planter is a utilitarian device, an advertisement, and ultimately a "junked vehicle." These qualities ***objectively dominate*** any expressive component of its exterior painting.

*Id.* at 327-8.  See also *Cressman v. Thompson*, 798 F.3d 938, 953 (10th Cir. 2015) endorsing the *Mastrovincenz* dominant purpose test, when analyzing whether a image of a Native American Indian shooting an arrow displayed on the state license plate constituted state forced "speech."

Even Justice Thomas in his concurring opinion *Masterpiece Cakeshop*, 384 U.S. ___ (2012) (upon which Plaintiff relies) endorsed a "primary purpose" analysis in opining that a wedding cake was symbolic speech.

> **Wedding cakes do, in fact, communicate this message. . . . "[W]edding cakes are so packed with symbolism  that it is hard to know where to begin."**
>
> \* \* \*
>
> **Although the cake is eventually eaten, that is not its <u>primary purpose</u>. . . . The cake's <u>purpose</u> is to mark the beginning of a new marriage and to celebrate the couple.**

Thomas, Slip Op. at p. 6. Justice Thomas' opinion was based on strong historical underpinnings that a wedding cake's "**primary purpose**" is symbolic and is universally understood to be so, unlike a style of architecture. Justice Thomas' use of this term ("primary") endorses the "dominate" purpose test found in *Mastrovincenzo* and is used interchangeably with the *Johnson* test.

Similarly, in many opinions the Supreme Court was different phrases to describe the degree of communication needed to qualify for First Amendment protection. In *Spence* (flying a flag upside down overlaid with peace symbol), the Court used the term "sufficiently imbued with elements of communication." 418 U.S. at 409. Later, in *FAIR*, the Court used the term "inherently expressive" to describe what constitutes protected speech. 547 U.S. at 64. In *Spence*, the Court found that the "nature of appellant's activity, combined with the factual context and environment in which it was undertaken" must be considered. *Spence*, 418 U.S. at 409-10.  This was reiterated in *Texas v. Johnson*, 491 U.S. 397 (1989) where the Court refined *Spence* into the two part test. All of these phrases or tests seem to convey the same idea:

> If one's conduct or a utilitarian object's primary or dominant purpose is functional rather than symbolic, when examined in context of the situation, there is not a great likelihood that those viewing it would reasonably conclude that it was intended to convey a message.

Plaintiff next argues that "the second prong appears to require a ***subjective*** determination of what the predominate purpose of the home is." (Obj. at 7-8) To the contrary, the Magistrate acknowledged that "[t]he Court makes an ***objective*** determination of the predominant purpose of the structure. As the *Mastrovincenzo* court noted, the artist's subjective intent may be relevant but is not controlling." The Courts are clear whether the conduct or utilitarian object is "communicative" is a legal determination for the courts – not a fact question for the jury – and it is based on examination of the relevant circumstances and context. See Town's Second Supp. Memo [D.E. 81] at pp. 21-24. Plaintiff also conceded that this was a legal determination in his filings. [D.E. 82] at p. 4.

3.     ***The Magistrate was Correct as to the Third Prong of the Test ("great likelihood that viewer would understand the message").***

Plaintiff asserts that "the articulated test further increases the speaker's burden by requiring a 'great likelihood,' rather just 'likelihood,' that a viewer would understand the design was communicating a message." (Obj. at 8) (quoting *Spence*, 418 U.S. at 410-11). *Spence* actually holds: "An intent to convey a particularized message was present, and in the surrounding circumstances ***the likelihood was great*** that the message would be understood by those who viewed it." 418 U.S. at 410–11. The 11th Circuit also requires a "great likelihood." *Trigo v. City of Doral*, 663 F. App'x 871, 874 (11th Cir. 2016).:

> [A] court must determine . . . (2) in the surrounding circumstances ***the likelihood was great*** that the message would be understood by those who viewed it. . .

Next, Plaintiff incorrectly asserts that the Magistrate's conclusion on the third prong is "factually unsupported." (Obj. at 8-9) (citing various architectural treatises and law review articles opining that architecture is a form of expressive art. Articles and treatises are not evidence, but merely non-binding support for Plaintiff's legal arguments. *See, e.g.*, *Smith v. Vestavia Hills Bd. of Educ.*, No. 2:16-CV-842-VEH, 2018 WL 1408537, at *7 (N.D. Ala. Mar. 21, 2018) (citing *Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991)) ("[F]acts set out in law review articles . . . are inadmissible hearsay."[3]

---

[3] See also *Travelcross, S.A. v. Learjet, Inc.*, No. 10-61842-CIV, 2011 WL 13214118, at *3 (S.D. Fla. Mar. 28, 2011) ("[L]egal arguments do not constitute evidence."); *Smart v. City of Miami*, 107 F. Supp. 3d 1271, 1278 (S.D. Fla. 2015) ("[N]ewspaper articles and web pages are not proper summary judgment evidence because they constitute hearsay." *Cull v. City of Orlando*,

Assuming that the articles are "evidence," Plaintiff next argues that "the mere fact that the authors opine that residential home design is a form of protected expression shows that the reasonable person standard is met." (Obj. at 8) Plaintiff states: "[i]f some people [the authors of the articles] would understand the actual message, then the standard is met." (Obj. at 9 n.3)  This is not the applicable test. Instead, the test "is whether *in context* there is a *great likelihood that a reasonable viewer* [not "some people"] would identify a communication [by this particular structure] . . . ." R&R at 31. The courts have clarified the term "reasonable viewer." The message must be understood by "third parties or casual observers," not just the plaintiff and his personal acquaintances. See *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557, 568 (1995) (to merit First Amendment protection, non-verbal conduct must have an "inherent expressiveness . . . to make a point," a point which must be made "not just [between the speakers], but to bystanders along the way.") Also, Justice Thomas, in his concurrence in *Masterpiece Cakeshop* made special note that the "average person" or "casual observer" knows the symbolism of a wedding cake.

**4.      *Even if a Residence is Expressive Conduct, O'Brien's Deferential Standard Governs as to Whether the First Amendment was violated. The Town Still Prevails.***

The Magistrate stopped the First Amendment analysis after determining that the house was not "communicative" in the constitutional sense. If this Court disagrees, then it should then go to the next step in the analysis – whether the regulations actually violate the First Amendment. In addressing this issue, the Court first determines if the ordinance (or its application) is "content neutral." If not, then strict scrutiny applies. If it is "content neutral," then the deferential *O'Brien* four part test applies.

According to Plaintiff, architectural style is intended to convey a message and therefore any regulation of architectural style is "content based," directed at the "speech" element of the structure, and is subject to strict scrutiny review. (Obj. at 11) In other words, any time an ordinance affects the speech component of expressive conduct or a symbolic object, it is "content based."

---

*Fla.*, 700 F. App'x 909, 913 (11th Cir. 2017) (explaining that non-movant "could not rely on a hearsay news article to defeat the motion for summary judgment").

Plaintiff is wrong. In determining whether a regulation is content neutral, a court must first determine whether it is ***facially*** content neutral, after which the court considers the regulation's justification or purpose. *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2228 (2015). A regulation will be deemed facially content-based only if its ***terms*** target speech based on communicative content and/or draw distinctions based on the message or idea expressed. *See Reed,* 135 S.Ct. at 2226-27.  "[L]aws that ***by their terms*** distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622, 643 (1994).

Plaintiff ignores the terms of the ARCOM Ordinance. The Ordinance limits the similarity/dissimilarity analysis to design features, massing, height, protection of privacy, arrangement of components, quality of materials, etc. – not style of architecture or a particular message.  *See* Town Code §18-205(a). [D.E. 24-65] The criteria that ARCOM considers include "spaciousness," "balance," "fitness," "harmony," and "compatibility," not a particular style of architecture or the message that a structure conveys. *See* Town Code Sec. 18-205(a) [D.E. 24-65]. There is nothing prohibiting two Mediterranean or International/Modern houses (or any other style) to be built side by side so long as they are not too similar, *i.e.*, not tract homes or cookie cutter houses. Plaintiff's own expert conceded than an "International/Modern" style house is not prohibited or discouraged by the criteria. *See* Tr. 5/25/16 at 72; 10-13 [D.E. 24-41]. Indeed, the "International/Modern" style is a recognized, acceptable standard in the Guidelines adopted by ARCOM. See Town's Second Supp. Memo at p. 30 [D.E. 81]

Again, this is similar to the *Clark* case where the plaintiff contended that "camping out" was expressive conduct in the context of a demonstration relating to the plight of the homeless. The rules prohibited all camping out. The Court found that the rules were "content neutral" (notwithstanding that they affected the expressive component of the conduct) and therefore there was no First Amendment violation under the deferential *O'Brien* test. *Compare Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) (finding sign code content-based because it expressly subjected ideological, political, and directional signs to different criteria); *Solantic LLC v. City of Neptune Bread*, 410 F.3d 1250 (11th Cir. 2005) (finding sign code content-based where it expressly exempted some types of signs but not others based on their content).

Next, an ordinance is content neutral if its ***predominant purpose is unrelated to the suppression of free expression***. *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47

(1986). The "principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech *because of disagreement with the message* it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). A content neutral regulation "serves purposes unrelated to the content of expression ... even if it has an incidental effect on some speakers or messages . . ." *Id.*

Applying that principle here, nothing in the language of Section 18-146 (statement of purpose) which shows any indication that the Town adopted these architectural review criteria because of a disagreement with any messages or any style of architecture. The stated purpose of the ARCOM ordinance is preserve the beauty, quality and values of Palm Beach and the harmony of neighborhoods and nature. Plaintiff failed to introduce any evidence disputing the Town's stated purpose. The Court must accord controlling weight to the Town's stated purpose of its own ordinances. *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 954-44 (D.C. Cir. 1995).

As to the application of the ordinance, Plaintiff concedes that the Town approved all but one of 15 applications for International/Modern architectural designs between 1954 and 2015. [D.E. 56 at ¶ 42]. Therefore, the application of the ARCOM ordinance has not targeted this design or any message it might convey. Moreover, since Burns never advised ARCOM that he intended to convey any particular message, it is impossible to find that ARCOM applied the ordinance to him because ARCOM disagreed with its message.

Most courts in analyzing an "expressive conduct" or "expressive object" case simply assume some sort of expressive purpose on a hypothetical basis. The courts then go directly into an analysis of whether the First Amendment has been violated, utilizing the deferential *O'Brien* four part test. See for example *Clark*, 468 U.S. 288 (1984). See also Town's Second Supplemental Brief at p. 17 [D.E. 81] for other examples. The most demanding First Amendment scrutiny that can ever apply in content neutral cases is the deferential four-part found in *United States v. O'Brien*, 391 U.S. 307, 377 (1968). *See Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 996-97 (11th Cir. 1998) (applying *O'Brien* four-part test to City nude dancing ordinance; affirming summary judgment and upholding ordinance and its application).

In cases involving content neutral ordinances, as here, a plaintiff rarely meets this deferential test. As one author concedes[4], courts consistently uphold "content neutral" governmental regulations even if the impact affects the speech component of the conduct:

> What matters when you try to regulate speech is what you aim at, not what you happen to hit. If you aim at public order, safety, aesthetics, economic infrastructure, or other content-neutral goals and do so in a way that is not subject-matter specific, not speaker-specific, and not idea-specific, then it does not matter if what you happen to hit is speech.

Each prong of the four-part *O'Brien* test is satisfied here:

(1)   Under *O'Brien*, the first question is whether a challenged law is "within the constitutional power of the Government." 391 U.S. at 377; *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984). It is well-settled by the courts that the ARCOM ordinance (aesthetic approval) is within the constitutional power of the Town. *See* Town's Initial Memo at 5 [D.E. 22]

(2)   The second question is whether the challenged law "furthers an important or substantial government interest." *O'Brien*, 391 U.S. at 377. Again, this point is well-settled with the courts. *See* Town's Initial Memo at 5 [D.E. 22].

(3)   Third, *O'Brien* asks whether "the government interest is unrelated to the suppression of free expression." 391 U.S. at 377. Here the ordinance is content neutral and makes no distinctions on the basis of the architectural style or the applicant's message.

(4)   Finally, *O'Brien* requires a deferential, tailoring inquiry. 391 U.S. at 381-82. This fourth prong asks whether a law's objective would "be achieved less effectively absent the regulation." FAIR, 547 U.S. at 67 (quoting Albertini, 472 U.S. at 689).

Most important, on the fourth prong, the question is not whether other means of pursuing the objective "might be adequate," only whether the law "add[s] to the effectiveness" of the government's goal. FAIR, 547 U.S. at 67-68; *Albertini*, 472 U.S. at 688; *Clark*, 468 U.S. at 299.

---

[4] Kathleen M. Sullivan, *Symposium: Cities on the Cutting Edge: A Symposium of Emerging Municipal Legal Issues: Discrimination, Distribution, and City Regulation of Speech*, 25 HASTINGS CONST. L.Q. 209, 216-17 (1998). See for example *United States v. Albertini*, 472 U.S. 675, 687 (1985) (holding that barring a protester from a military base because of his past acts of vandalism only "incidentally burdens speech").

Clearly, having a review process like that found in the ARCOM Ordinance and Guidelines adds to the effectiveness of the goal to be achieved.

As to the application of the ordinance to Plaintiff, the record contains ample evidence to support the stated "non-speech" reasons for ARCOM's denial. The opposing experts and the neighbors all testified as to the over-massing on an undersized lot, its impact on adjoining properties, and its dissimilarity with the massing in the neighborhood. The stated written reasons for the denial were based entirely on the content neutral criteria. See Town's Second Supp. Memo at p. 15 [D.E. 81].

Therefore, even if this Court finds that the Magistrate was incorrect in his analysis on whether residential architecture is "communicative" in the constitutional sense, the Town must still prevail. There is no violation of the First Amendment by the content neutral ordinance or its application under the *O'Brien* test.

### C.   The Magistrate Was Correct on His Analysis of Vagueness Arguments (Plaintiff's Objection Point IV at p. 12-15).

Plaintiff's objection relating to the "vagueness" determination is virtually identical to his arguments rejected by the Magistrate. *Compare* Objs. at 13-15 with DE 86 at 7-9. Plaintiff cuts and pastes much of his argument from briefing submitted earlier. "It is improper for an objecting party to ... submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to an R & R." *Kita v. Berryhill*, 2017 WL 3601825, at *2 (S.D. Fla. Aug. 3, 2017) (Bloom, J.).

Substantively, Plaintiff's argument rests on an erroneous assumption that architecture is "pure speech" and ordinances regulating it are subject to a much higher standard. This premise is wrong; architecture is not "pure speech." The normal standards of review apply.

A civil statute is too vague only if it cannot be understood by reasonable people. As the Eleventh Circuit has held, "[a] civil statute is unconstitutionally vague only if it is so indefinite as really to be no rule or standard at all." *Leib v. Hillsborough Cty. Public Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009). "If a statute can be made constitutionally definite by reasonable construction, the Court is under a duty to give it such a construction." *Rectory Park, L.C. v. Delray Beach*, 208 F. Supp. 2d 1320, 1328 (S.D. Fla. 2002) (Hurley, J.) (citing *United States v. Thomas*, 567 F.2d 299 (5th Cir. 1978)).

Plaintiff's new assertion attacks subsection 18-205(a)(6)**b** criterion dealing with "dissimilarity." He claims it is "barely understandable" and reflects "quintessentially unfettered discretion" (Obj. at 12-13). Subsection 18-205(a)(6)**b** addresses whether the proposed structure is excessively dissimilar to surrounding properties. Under the terms of the ARCOM ordinance, this involves examining "***other significant design features, including, but not limited to, materials or quality of architectural design***." This is not "unfettered discretion."

The specific design components identified in ARCOM Ordinance, Section 18-205(a)(6) (compatibility, similarity/dissimilarity harmony, height, massing, etc.), have been repeatedly upheld against constitutional vagueness attacks. *See Rectory Park,* 208 F. Supp. 2d at 1331-32 and authorities cited therein. (Delray Beach ordinance giving commission discretion to deny a project that was "***not compatible*** in terms of ***building mass*** and ***intensity of use*** with surrounding development" was "sufficiently clear and definite … to pass constitutional muster"). *See also* Town's Initial Memo at 6-7 [D.E. 22]; Town's Second Supp. Memo at 31-34 [D.E. 81] citing many appellate cases in other circuits for the same proposition.[5]

Also, the architects and experts who testified before ARCOM, including Mr. Chase, understood all of the criteria set forth in Section 18-205(a)(6), including subsection **b**, and made cogent arguments applying all such criteria. This demonstrates that the criteria is readily understood by reasonable people and is not "barely understandable."

Also, ARCOM promulgated "Guidelines" in 1995, which reflect "an attempt to distill certain characteristics of proposed projects which ARCOM encourages" and "suggest specific ways in which beauty, spaciousness, balance, taste, fitness, charm, and high quality have been and may be achieved." Chase Report [D.E. 42-4] at 2, 6-7 and PowerPoint [D.E. 42-5]. The Guidelines limit ARCOM's discretion and support the constitutionality. See *Joel v. Orlando*, 232 F.3d 1353, 1361 (11th Cir. 2000) (affirming summary judgment and holding ordinance prohibiting "camping" on public property not impermissibly vague where officers must exercise some ordinary level of discretion but also follow guidelines in city promulgated handbook).

---

[5] Even Burns himself argued in prior memos that ARCOM members failed to apply the "objective, articulated standards" found in the ARCOM ordinance, but instead applied personal taste and therefore acted "arbitrary.". [D.E. 81 at 3]  In this argument, Plaintiff conceded that the ARCOM standards are objective, but now he argues to the contrary. He cannot "have his cake and eat it too."

Next, the members of ARCOM are required by Town Code to be qualified by training or experience in art, architecture, real estate and other relevant areas of expertise. [D.E. 24-66, Town Code § 18-167] This is relevant on a vagueness argument. *See Maher v. City of New Orleans*, 516 F.2d 1051, 1062 (5th Cir. 1975) (Such expertise "curb[s] the possibility for abuse by a quasi-judicial body.")

Lastly Plaintiff's vagueness argument is a specific challenge to subsection 18-205(a)(6)**b**. This is not appropriate because ARCOM only found that Plaintiff's proposed structure violated Sections 18-204(4) and 18-204(6)c, d, e and f, not subsection **b**. [D.E. 24-64]. Plaintiff can only assert a facial challenge to what was applied to him. *See Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla*., 351 F.3d 1112, 1116 (11th Cir. 2003) (holding billboard company only had standing to challenge portion of city sign ordinance under which its permit applications were denied, not other sections or the entirety of the ordinance; no "injury in fact" was suffered). Even if Plaintiff could make a facial challenge, it "is the most difficult challenge to mount successfully against an enactment, since the challenger must establish that no set of circumstances exist under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987). Plaintiff fails to meet this standard.

### D.   Equal Protection. (Plaintiff's Objection Point V at p. 15-16)

**1.    *The Magistrate was Correct Because Plaintiff Failed to Identify a Single Similarly Situated Comparator.***

To establish a "class of one" equal protection claim, Plaintiff must show he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The crux of the claim is the similarity of the comparators. Different treatment of dissimilarly situated persons does not offend the Equal Protection Clause. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). To be "similarly situated," the comparators must be "prima facie identical in all relevant respects." *Id.*

In his Complaint, Plaintiff vaguely asserted that the Town's "historical applications" of the ARCOM ordinance have had "anomalous results vis-à-vis the issuance of building permits," allowing "dissimilar structures to be approved and constructed" yet denying Plaintiff's application. [D.E. 1, Compl. at ¶ 32]. Plaintiff failed to cite any comparators. This alone warrants dismissal. See Town's Memo in Support of Motion to Dismiss at p. 15 [D.E. 22].

Next, where Plaintiff bears the burden of proof, the moving party can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Latele*, 2014 WL 7272974, at *4 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, (1986)). At the summary judgment stage, the burden a "class of one" plaintiff carries "is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks." *Cordi-Allen v. Conlon*, 494 F.3d 245, 252 (1st Cir. 2007)  District courts in this circuit routinely dismiss "class of one" equal protection claims lacking any factual detail regarding the "similarly situated" requirement. *See* Town's Initial Memo at 15 & n.3 [D.E. 22].

Courts must apply the "similarly situated" requirement "with rigor to avoid constitutionalizing every state regulatory dispute." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007). This requirement is particularly difficult to establish in a case of "undeniably multi-dimensional" regulatory review "involving varied decision-making criteria applied in a series of discretionary criteria." *Id.* at 1203.

If the Court is to decide that ARCOM "intentionally treated" Plaintiff differently from "others similarly situated" and did so "without a rational basis," the Court must review the evidence ARCOM was presented when it ruled on Plaintiff's application. ARCOM denied Plaintiff's application primarily because of its over-massing on an undersized lot, citing Section 18-205(6) (excessively dissimilar in relation to any other structure within 200 feet in respect to . . . [including] (e) ***appearance of mass*** . . . and (f) . . . ***design that is complimentary with size and massing of adjacent properties***). Comparators should be prima facie identical as lot coverage, lot size and massing as to the proposed structure, but also the adjacent properties.  At summary judgment, the Magistrate properly considered Mr. Chase's (plaintiff's expert) report and opinions [D.E. 24-29, 24-41, and 24-43] as this was the evidence presented.

Plaintiff next attempts to create an issue of fact on equal protection by citing Mr. Chase's testimony that from 1954 to 2017 the Town had approved all but one home in the International/Modern style. Plaintiff misses the point that both Mr. Chase (at ARCOM hearing) and Plaintiff (at summary judgment) could but failed to address the massing of the comparators, their lot coverage, the massing of surrounding houses, their lot coverage, and the like. The approved homes were not shown to be "similarly situated" comparators in all relevant respects.

Next, Plaintiff misrepresents that "the Town first argued the merits of the Chase Report at the May 17, 2018 hearing" and that the arguments regarding the Chase report and opinions "were

not originally part of the Town's original Motion or Memorandum" (Obj. at 15) The Town's initial memo addressed Mr. Chase's report. [D.E. 22 at 16]  The Town's additional response further addressing his report was entirely proper rebuttal. *See Baltzer v. Midland Credit Management, Inc.,* 2014 WL 3845449, at *1 (S.D. Fla. 2014); S.D. Fla. L.R. 7.1.

Plaintiff next complains that the Magistrate was wrong in addressing only the International/Modern structures cited by Mr. Chase. (Obj. at 96) Plaintiff ignores that his counsel conceded at the hearing "***the primary evidence*** we have here is Mr. Chase's report." Tr. at 101:22-102:1. Plaintiff argued to the Magistrate, as he does now, that ***every applicant*** before ARCOM throughout all time  would be "similarly situated" to Plaintiff.

> THE COURT:          … What is the – what are the factors I need to look at, in your view, to determine if something is similarly situated to Mr. Burns' proposal?
>
> MS. MANSFIELD:   Applicants of new buildings that come under ARCOM review.
>
> THE COURT:          All of them?
>
> MS. MANSFIELD:   Yes….(excepting historic landmarks)

Tr. at 102:16-22. This overly broad assertion is legally insufficient to avoid summary judgment. "Bare allegations that 'other' applicants, ***even all other' applicants***, were treated differently do not state an equal protection claim." *Griffin Indus.*, 496 F.3d at 1205 (citing *GJR Inv., Inc. v. County of Escambia*, 132 F.3d 1359, 1367-66 (11th Cir. 1998). *See also Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed. App'x 826, 836 (6th Cir. 2009); *Dibbs v. Hillsborough Cty., Fla.*, 67 F. Supp. 2d 1340, 1354-55 (M.D. Fla. 2014).

Lastly, contrary to Plaintiff's argument, the Magistrate correctly relied on *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) to conclude that timing is relevant. The Eleventh Circuit approved *Purze* in *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006) (citing *Purze* and holding that "[i]n the zoning context, projects which seek different types of variances are not similarly situated"). Other Circuits are in accord. Citing to *Purze*, the First Circuit stated:

> In the land-use context, ***timing is critical and, thus, can supply a important basis for differential treatment***… [D]ifferential treatment – especially differential treatment following a time lag – may indicate a change in policy rather than an intent to discriminate. Consequently, the most reliable comparisons are likely to be from roughly the same time frame.

*Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir 2007). *See also Taylor Acquisitions*, 313 Fed. App'x 826, 836-37 (6th Cir. 2009) (affirming summary judgment where plaintiff's proposals were considered by **two differently-composed city councils**); *Pappas v. Town of Enfield*, 18 F. Supp. 3d 164, 181-82 (D. Conn. 2014). (Relevant factors to consider include "**temporal disparity**, and c**omposition of decision-making boards**" for the determination of similarly situated.) (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

2.      ***After Enquist, a Class-of-One Equal Protection Claim is Not Viable in a Discretionary Land Use Case.***

Although the Magistrate declined to reach the argument, this Court can still grant summary judgment on Plaintiff's equal protection claim as a matter of law. The Supreme Court in *Enquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008) clarified that *Olech* class-of-one claims do not apply to government acts "which … involve discretionary decision making based on a vast array of subjective, individualized assessments." Although the *Enquist* decision was made in the employment context (hiring, firing, promotion, etc.), the logic is equally applicable to the ordinances here which clearly deal with "discretionary decisions" which are based on a "vast array of . . . individualized assessments." *Enquist*, 533 U.S. at 603. *See* Town's Initial Memo at 11-17 [D.E. 22]; Town's Second Supp. Memo at 24-25 [D.E. 81 at 27-28].

## CONCLUSION

The Magistrate's R&R should be approved and adopted by this Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of August, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jones, Foster, Johnston & Stubbs, P.A.
*Attorneys for Defendant*
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Phone: 561-659-3000
Facsimile: 561-650-5300

By:  ___*/s/ Margaret L. Cooper, Esq.*___
    Margaret L. Cooper, Esq.
    Florida Bar No. 0217948
    mcooper@jonesfoster.com
    Joanne M. O'Connor, Esq.
    Florida Bar No. 0498807
    joconnor@jonesfoster.com
    John C. Randolph, Esq.
    Florida Bar No. 129000
    jrandolph@jonesfoster.com

## SERVICE LIST

## CASE NO.: 9:17-cv-81152-BLOOM/REINHART

Jennifer A. Mansfield, Esq.
Florida Bar No. 0186724
Primary: jennifer.mansfield@hklaw.com
Secondary: dawn.hewett@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: (904) 353-2000
Facsimile:  (904) 358-1872
*Attorney for Plaintiff*

p:\docs\13156\00405\pld\1vk5003.docx