## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 17-cv-81152-BLOOM/Reinhart

DONALD BURNS,

      Plaintiff,

vs.

TOWN OF PALM BEACH,

      Defendant.

_____/

## <u>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss and/or for Summary Judgment, ECF No. [21], (the "Motion"). The Motion was previously referred to the Honorable Bruce E. Reinhart for a Report and Recommendation. *See* ECF No. [53]. On July 13, 2018, Judge Reinhart issued a Report and Recommendation, ECF No. [93] ("Report"), recommending that the Motion be granted and that judgment be entered in favor of Defendant, the Town of Palm Beach ("Defendant" or "Town").

The Report advised that a party shall serve and file written objections, if any, to this Report and Recommendation within 14 days of being served with a copy of this Report and Recommendation. ECF No. [93] at 45. Plaintiff timely filed Objections, ECF No. [96] ("Objections"), and Defendant filed a Response to Plaintiff's Objections, ECF No. [102] ("Response"). The Court has also considered Plaintiff's Notice of Supplemental Authority, ECF No. [105], and Defendant's Notice of Supplemental Authority, ECF No. [112]. The Court has considered the filings and is now duly advised.

## I.     BACKGROUND

The Court adopts Judge Reinhart's description of the record, the parties' legal arguments, and the undisputed material facts, Report at 3–12, and incorporates these discussions by reference herein.

## II.     LEGAL STANDARD

### A.  Summary Judgment

Neither party objects to Judge Reinhart's recitation of the legal standard for summary judgment, which is correct and adopted herein.  Report at 15.[1]

## III.     ANALYSIS

Plaintiff lodges four objections to Judge Reinhart's Report, arguing that the Report: (1) errs by recommending that the Motion be granted while discovery is open; (2) improperly inserts a dominant expressive purpose test into the First Amendment expressive conduct test; (3) erred in concluding that Section 18-205 is not void for vagueness; and (4) improperly analyzes the equal protection challenge.  The Court reviews the objected portions of the Report *de novo* and addresses each in turn.  *See* Fed. R. Civ. P. 72(b)(3).

### A.  Objection Number One: The Report Erred by Recommending that the Motion be Granted While Discovery is Open

Plaintiff first objects to the Report's recommendation that the Court grant summary judgment prior to the close of discovery.  Objections at 2–3.  The Eleventh Circuit has made clear that district courts are "not required to await the completion of discovery before ruling on a motion for summary judgment."  *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990); *Reflectone, Inc. v. Ferrand Optical Co., Inc.*, 862 F.2d 841, 843–44

---

[1] At a status conference on April 16, 2018, the parties agreed that the Court should treat the Motion as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  *See* Report at 1.  Based upon the agreement, Judge Reinhart correctly applied the legal standard of a motion for summary judgement.

(11th Cir. 1989). If a party needs further discovery to respond to a motion for summary judgment, under Federal Rule of Civil Procedure 56(d), the party may show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). If the party makes this showing, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*

Plaintiff filed a Rule 56(d) declaration on December 22, 2017. ECF No. [41]. However, as Judge Reinhart explained, after filing this declaration, Plaintiff had five months to take any necessary discovery prior to the hearing on the Motion on May 27, 2018. Report at 2 n.1. Judge Reinhart found that Plaintiff waived any objection to the Court ruling on the Motion based on a lack of sufficient discovery because Plaintiff fully briefed a response to the Motion and participated in oral argument. *See id.* (citing *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) and *Villa v. Bd. of Cty. Comm'rs of the Cty. of Arapahoe*, 1991 WL 70714 at *4 (10th Cir. May 1, 1991)).

Plaintiff argues that the Report erred in finding that he waived this objection because he reiterated the need to complete discovery multiple times. Objections at 2. He also argues that *Pasternak* is inapposite because there no party notified the court of the need for additional discovery and discovery had been going on for a year. *Id.* at 3. In addition, *Pasternak* was decided in 1986, and Rule 56 has undergone revisions since then. *Id.*

The Court agrees with Judge Reinhart that Plaintiff waived any objection to ruling on the Motion before the close of discovery. Plaintiff attempts to distinguish *Pasternak*, but does not address the Tenth Circuit's holding in *Villa* that when "a party has responded to a summary judgment motion under 56(e), that party waives any option it may have had to proceed under

Rule 56[d]." *Villa*, 1991 WL 70714 at *4. Moreover, the general principal set forth by the Tenth Circuit in *Pasternak* that "[t]he protection afforded by Rule 56[d] is an *alternative* to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment," *Pasternak*, 790 F.2d at 833, has also been adopted by the Fifth Circuit. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285. Although as Plaintiff states, these cases interpret Rule 56(d)'s predecessor, Rule 56(f), they are still applicable because the rule has not substantially changed. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2740 (4th ed. 2018) ("When Rule 56 was rewritten in 2010, those provisions were moved to a new subdivision (d), without any substantial change. Thus, precedent prior to 2010 citing Rule 56(f) is fully applicable to current Rule 56(d)); *see also Smedley v. Deutsche Bank Trust Co. Ams.*, 676 F. App'x 680, 681–82 (11th Cir. Jan. 18, 2017) (relying on cases analyzing former Rule 56(f) to interpret current Rule 56(d)).

Even if Plaintiff did not waive the objection by responding to the Motion, his declaration is insufficient to satisfy Rule 56(d). "In seeking the protection of Rule 56(d), the non-movant must show that 'postponement of a ruling on the motion will enable [him], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact … [V]ague assertions that additional discovery will produce needed, but unspecified facts' fail to meet this burden." *See Smedley*, 676 F. App'x at 861–62 (citing *Fla. Power & Light Co.*, 893 F.2d at 1316). Plaintiff's 56(d) declaration did not specifically demonstrate facts he could discover that would rebut the Motion. Instead, it listed general categories of discovery that would be sought. *See* ECF No. [41] at ¶ 4 ("Discovery that Plaintiff intends to take in this case include obtaining official records, recordings, and transcripts of ARCOM hearings…"); ¶ 5 ("Plaintiff also intends to take discovery on the legislative history of the Special Exception ordinances and ARCOM

ordinances…"); ¶ 7 ("Plaintiff intended to obtain expert testimony…"). In addition, Plaintiff has not provided any reason why he could not have obtained this discovery during the five months before the hearing on the Motion. The ARCOM hearing transcripts and legislative history of the Ordinances are public records, and Plaintiff could have retained an expert to provide an expert opinion. Accordingly, the Report properly concluded that it was appropriate for the Court to rule on the Motion prior to the close of discovery.

### B. Objection Number 2: The Report Improperly Inserts a Dominant Expressive Purpose Test into the First Amendment Expressive Conduct Test

Plaintiff contends that architecture and architectural design are forms of expression protected by the First Amendment. Report at 17. To that end, he argues that the proposed residential structure was visual art that intrinsically expressed Plaintiff's personal values. *Id.* Plaintiff consequently asserts the Town violated his First Amendment rights to create and display this art through ARCOM's denial. Judge Reinhart ultimately recommended that Plaintiff's First Amendment claims be denied.

Chiefly, Plaintiff challenges Judge Reinhart's application of the dominant expressive purpose test, discussed in *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006), to the expressive conduct test, discussed in *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

Judge Reinhart accurately addressed the scope of First Amendment protection. The First Amendment prohibits the government from "restrict[ing] expression because of its message, its ideas, its subject matter, or its content." *Nevada Comm'n on Ethics v. Carrigan*, 563 U.S. 117, 121 (2011) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). However, because "[i]t is possible to find some kernel of expression in almost every activity a person undertakes," *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), First Amendment protections extend only to "conduct that is inherently expressive." *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S.

47, 66 (2006); *U.S. v. O'Brien*, 391 U.S. 367, 376 (1998) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.").

Judge Reinhart noted that both parties suggest similar tests for determining whether Plaintiff's proposed residence qualifies as First Amendment expression. Report at 18. That is, both parties suggest some version of the *Johnson* test — whether there was an intent to convey a particularized message and whether the likelihood was great that the message would be understood by those who view the relevant object or expression. *Johnson*, 491 U.S. at 404. However, the Town also suggests a "dominant purpose" test, which questions whether the predominant purpose of the expression (or object) is to communicate a message or whether the expression (or object) predominately serves some other purpose. *See Mastrovincenzo*, 435 F.3d at 95.

Judge Reinhart explained that there are two lines of First Amendment jurisprudence relevant to an appropriate analysis here. Report at 20. The first line of jurisprudence involves expressive conduct, "that is, public actions that are intended by the actor to communicate an expressive message." *Id*. The second line of jurisprudence involves expressive merchandise, or "tangible objects that have a function independent of expression, but that also involve an element of expression." *Id.*

The Supreme Court's expressive conduct test establishes whether "particular conduct possesses sufficient communicative elements to bring the First Amendment into play." *Johnson*, 491 U.S. at 404. In *Johnson*, the Court analyzed whether a defendant's conviction for burning the American flag was constitutional under the First Amendment. *Id.* at 399. In finding that the conviction was unconstitutional, the Court applied the expressive conduct test: "whether 'an

intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it.'" *Id.* at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–411 (1974)). The Eleventh Circuit has further counseled that, in determining whether conduct is expressive, "we ask whether the reasonable person would interpret it as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (emphasis in original).

Neither the Supreme Court nor the Eleventh Circuit has addressed First Amendment protections for expressive merchandise. The Second Circuit has addressed expressive merchandise in two widely-cited opinions involving the sale of art and clothing by street vendors in New York City. *See Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996); *Mastrovincenzo*, 435 F.3d at 96–97. In both cases, street vendors challenged a New York City ordinance that required the vendors to obtain a license to sell merchandise, arguing that the ordinance violated their First Amendment right to freedom of expression. The plaintiffs did not argue that the act of selling the merchandise was protected speech but rather that the merchandise itself was art that contained an intrinsic expressive message. *See Bery*, 97 F.3d at 695.

In *Bery,* the Second Circuit reversed the district court and held that street art vendors were entitled to First Amendment protection, but noted that different forms of art contain different levels of expressive content, not all of which are entitled to protection. It stated:

> The district court seems to have equated the visual expression involved in these cases with the crafts of the jeweler, the potter and the silversmith who seek to sell their work. *Bery,* 906 F.Supp. at 167. While these objects may at times have expressive content, paintings, photographs, prints and sculptures, such as those appellants seek to display and sell in public areas of the City, always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection. Courts must determine what constitutes expression within the ambit of the First Amendment and what does not. This surely will prove difficult at times, but that difficulty does not warrant placing all visual expression in limbo outside the reach of the First Amendment's protective

arm. Courts have struggled with such issues in the past; that is not to say that decisions are impossible.

*Id.* at 696.

In *Mastrovincenzo*, the Second Circuit revisited whether potentially-expressive visual art receives First Amendment protection. *Mastrovincenzo*, 435 F.3d at 91–92. There, appellants were street vendors that sold clothing painted with customized graffiti and argued that each article was a work of art. *Id.* at 87–88. Instead of deciding whether the clothing was indeed "art," the court applied a two-part test to determine whether the sale of graffiti clothing warranted First Amendment protection: (1) whether the sale of the clothing was "predominantly expressive," and if so, (2) did the licensing ordinance fail an intermediate standard of First Amendment scrutiny. *Id.* at 91. Relevant here, the first question required the court to examine the vendors' predominant purpose, or "whether the disseminators of that clothing are genuinely and primarily engaged in artistic self-expression or whether the sale of such goods is instead a chiefly commercial exercise." *Id.* To do that, the court explained that "objective features of the merchandise itself" must be analyzed to determine if the item serves "predominantly expressive purposes." *Id.*

> Once a court has determined that an item possesses expressive elements, it should then consider whether that item also has a common non-expressive purpose or utility. Because merchandise that clearly has a alternative, non-expressive purpose—such as the recreational, apparel, and transportation goods mentioned above—is more likely to possess only marginally expressive content or to have been minimally embellished for the purpose of avoiding regulation, courts should exercise greater skepticism in designating such items as "expressive merchandise." The fact that an object serves some utilitarian purpose does not, however, automatically render it non-expressive; rather, upon a finding that the item in question possesses some common non-expressive purpose, a court should then determine whether that non-expressive purpose is dominant or not. Where an object's dominant purpose is expressive, the vendor of such an object has a stronger claim to protection under the First Amendment; conversely, where an object has a dominant non-expressive purpose, it will be classified as a "mere

commercial good[ ],'" the sale of which likely falls outside the scope of the First Amendment.

*Id.* at 95 (brackets in original).

The Second Circuit ultimately found that the vendors' sale of graffiti clothing was predominantly expressive. *Id.* at 96. Importantly, however, the court specifically stated that in determining whether the sale of the clothing was protected speech under the First Amendment, it declined to apply the First Amendment doctrine of expressive conduct. *Id.* at 91 n.9. The court explained:

> We need not apply the doctrine of expressive conduct here because plaintiffs' conduct—namely, the sale and dissemination of their artistic objects—does not itself contain expressive conduct. That is, plaintiffs' claims to First Amendment protection are not predicated on the theory that the act of distributing their artistic objects itself conveys a separate "particularized message" likely to be understood by an audience. Rather, plaintiffs assert that by disseminating to the public objects that they have invested with meaning through their artistry they are communicating directly through those objects—in short, that they are engaging in protected speech.

*Id.*

With this backdrop, Judge Reinhart analogized Plaintiff's residential structure to potentially-expressive merchandise because the structure has both a communicative component (the architecture) and a meaningful non-communicative functional purpose (a residence). Report at 27. Judge Reinhart correctly noted that "[w]hen dealing with potentially-expressive tangible objects . . . a more limited approach is warranted because there is less risk of abridging core First Amendment principles, and more risk of prohibiting government regulation of objects that are not primarily expressive." *Id.* Therefore, Judge Reinhart added the Second Circuit's "predominant purpose" framework into the *Johnson* framework to provide a "necessary limitation when dealing with potentially-expressive tangible objects." Report at 29. The test employed considered:

(1) Is the owner of the structure subjectively intending to communicate a message? [*Johnson* test]

(2) Is the predominant purpose of the structure to communicate a message? [*Mastrovincenzo* test]

(3) Is there a great likelihood that a reasonable person observing the structure in the context of the surrounding circumstances would understand it to be predominantly communicating some message, albeit not necessarily the particularized message intended by the owner? [*Johnson* test]

*Id.* (alterations added).

Judge Reinhart found that Plaintiff satisfied the first element because the record is clear that Plaintiff subjectively intended to communicate a message with his residential structure. *Id.*

Turning to the second element, Judge Reinhart found that, in context, "the predominant purpose of Burns' structure was non-expressive." *Id.* at 30. Judge Reinhart cited several reasons why, objectively, the predominant purpose of the residence is non-expressive, including that the architectural drawings submitted to ARCOM unequivocally show that the structure is, "first and foremost, a residence . . . . consisting of two stories above a basement containing a garage, laundry, wine storage, and a steam room," *id.*, and that the drawings include a "privacy wall and heavy landscaping on the west side of the property to provide a buffer between the public thoroughfare and the structure," *id.* at 30–31.

Finally, Judge Reinhart concluded that Plaintiff failed to show a great likelihood that a reasonable observer would understand the proposed structure to predominantly communicate a message. While the custom design may "militate in favor of an observer discerning some expressive message[] . . . . that message is ambiguous." *Id.* at 31–32. The message may be that "the owner could afford this particular design, or that the owner likes modern architecture, or that the owner likes this particular architect." *Id.* at 32. "The fact that the structure is a different style from the neighboring structures (and from the existing structure) sends a similarly ambiguous message . . . . [p]erhaps [the owner] believes a house made of glass and sturdy

materials will be more energy efficient or hurricane resistant." *Id.* In sum, Judge Reinhart found that "a reasonable observer would [not] conclude that the predominant purpose of the structure was expressive rather than residential or functional." *Id.*

Thus, because Judge Reinhart found that Plaintiff failed to satisfy the second and third elements of the *Johnson/Mastrovincenzo* test, he refrained from addressing whether the Ordinances are content-neutral time place manner restrictions or whether they pass scrutiny. Moreover, because the Ordinances are appropriately applied to Plaintiff's proposed structure, his facial challenge was also rejected.

Plaintiff contests the Report's conclusion that his home is a "tangible object," or merchandise, noting that the Eleventh Circuit has not adopted the *Mastrovincenzo* predominant purpose test. Objection at 4. Plaintiff argues that Judge Reinhart should have applied the Supreme Court's existing First Amendment test without adding the *Mastrovincenzo* element. Objections at 7. He further asserts that the Supreme Court already confronted the issue of objects that could, but may not, have expressive meaning when it developed the test articulated in *Johnson* and that this Court should follow that precedent. *Id.* And, Plaintiff asserts that it is not relevant that the message conveyed from the architecture is ambiguous because a reasonable observer need only interpret *some* sort of message, not a *specific* message. Objections at 9; *see Holloman*, 370 F.3d at 1270.

Judge Reinhart correctly noted that not all "speech" is treated equally under the law. Indeed, Plaintiff's proposed residence is not "pure speech" in its ordinary sense — it is primarily a residence in which Plaintiff intends to live. Treating Plaintiff's proposed residence as "pure speech" likely subjects the Ordinances to strict scrutiny review, thereby eradicating a local government's ability to effectively regulate aesthetic qualities of structures, as no ordinance

could survive strict scrutiny muster. But, "this circuit . . . [has] recognized a government's substantial interest in aesthetics and the right to maintain its aesthetics through zoning regulations." *Fla. Public Telecommunications Ass'n, Inc. v. City of Miami Beach*, 321 F.3d 1046, 1055 (11th Cir. 2003); *see also Kennedy v. Avondale Estates, Ga.,* 414 F.Supp.2d 1184, 1202 (N.D. Ga. 2005) ("It is well settled law that the state may legitimately exercise its police powers to maintain traffic safety and advance its aesthetic interests.") (citing *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984)). Therefore, it was wholly appropriate for Judge Reinhart to include a limitation on the First Amendment protection analysis based on the Second Circuit's *Mastrovincenzo* case to account for the different considerations applicable here.

Judge Reinhart's consideration of the proposed residence's primary or dominant purpose was necessary to a complete the First Amendment analysis. Courts analyzing whether First Amendment protection is warranted often consider the primary or dominant purpose of the object or conduct to be protected, even if such consideration is not explicitly labeled an element. *See Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 295 (1984). In *Clark*, the Supreme Court examined whether the Park Service's denial of demonstrators' application to camp out in public places violated the demonstrators' First Amendment rights, when the purpose of the demonstration was to raise awareness of the plight of the homeless. *Id.* To be sure, camping out to demonstrate the plight of the homeless is an expressive act, whereas camping out to enjoy nature, for instance, is not. Determining the purpose of the conduct assists in the analysis of whether the First Amendment is implicated. *Id.* at 299.

In conducting First Amendment analysis, "context matters." *Ft. Lauderdale Food Not Bombs v. Ft. Lauderdale*, 2018 WL 4000057, at *1 (11th Cir. Aug. 22, 2018). Plaintiff seeks to

invoke the First Amendment to require the Town to permit his renovation, contrary to ARCOM and the language of the Town's Ordinances. Unlike obviously expressive conduct, such as that of the demonstrators in *Clark*, determining whether an inanimate object, such as a house, is entitled to First Amendment protection necessarily requires analysis of the purpose of the object. As Judge Reinhart explained, "[a] broad spectrum of tangible objects could be deemed to be expressing *some* message, even a *de minimus* one—a beautifully plated meal could be expressing the chef's artistic philosophy; a hybrid car may communicate the owner's concern about greenhouse gases . . ." Report at 27–28. To not unduly restrict a government's regulatory police power by assigning First Amendment protection to any object that *could* convey a message, the *primary* purpose of the object must be examined before providing that constitutional protection. And Judge Reinhart's determination that the proposed residence's primary purpose is, indeed, to be a residence, is consistent with the record and caselaw. Report at 30–31.

Plaintiff also contends that Judge Reinhart erroneously overlooks that this case involves First Amendment protection of a home, which is subject to increased constitutional protection. Citing *Lawrence v. Texas*, 539 U.S. 558 (2003), he argues that "the exterior design of a home has great expressive meaning." Objections at 5. Plaintiff also cites *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) and *Griswold v. Connecticut*, 381 U.S. 479 (1964) as support for his argument that speech in the home carries distinct or deeper meaning. Objections at 5. Plaintiff concludes that because free speech rights are greater in the home than elsewhere, the Report erroneously finds that a privately owned structure in a residential neighborhood is entitled to no First Amendment protection.

Plaintiff's reliance on *Lawrence, Gilleo,* and *Griswald* is misplaced. Each case involved an issue completely distinct from those at bar, namely, whether a city zoning ordinance is an

unconstitutional restraint on First Amendment expression. In *Lawrence,* the Supreme Court held that a Texas statute forbidding two persons of the same sex from engaging in intimate sexual conduct was unconstitutional under the Due Process Clause of the Fourteenth Amendment. *Lawrence,* 539 U.S. at 562. That case involved individuals' entitlement to "respect for their private lives," *id.* at 578, which is not similarly at stake in this case regarding residential design. Like *Lawrence, Griswald* also involved the right to privacy, holding that a Connecticut law forbidding the use of contraceptives was unconstitutional. *Griswald*, 381 U.S. at 485. Plaintiff's use of *Griswald* to demonstrate the "sanctity of a man's home and the privacies of his life" has no application here; *Griswald* has nothing to do with a First Amendment argument for the unconstitutionality of a zoning regulation. *See* Objections at 5. Finally, while *Gilleo* does involve a First Amendment challenge to a city ordinance, the ordinance at issue prohibited homeowners from displaying political signs on their property. *Gilleo,* 512 U.S. at 45. The display of a political sign invokes stronger and different First Amendment considerations than residential architecture, as articulated in *Mastrovincenzo*. *See Mastrovincenzo,* 435 F. 3d at 92 ("The observation that *any* object with a size, shape and density has the potential to be art . . . is a truism, and, in legal terms, not entirely helpful. To say that the First Amendment protects the sale or dissemination of all objects ranging from totem poles, to television sets does not take us far in trying to articulate or understand a jurisprudence of ordered liberty; indeed, it would entirely drain the First Amendment of meaning.") (internal quotations omitted) (emphasis in original). Any observer can see that a political sign conveys a message or speech. Residential architecture, on the other hand, does not convey nearly the same direct expressive meaning. From these cases, Plaintiff is incorrect to conclude that free speech rights are greater in the home than elsewhere. Rather, the Supreme Court has time and time again affirmed that a city has

authority to enact zoning ordinances aimed at beautifying residential areas. *See, e.g., Penn. Cent. Transp. Co. v. N.Y.*, 438 U.S. 104, 129 (1978) ("[T]his court has recognized, in a number of settings, that States and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city . . .").

Plaintiff additionally argues that even if the predominant purpose test applies, the Report incorrectly concluded that speech was not the Plaintiff's predominant purpose in redesigning his home. First, the Plaintiff contends that the Report should not have relied on certain elements of the Plaintiff's design to conclude that the predominant purpose of his structure was non-expressive. Objections at 6–7. However, Judge Reinhart correctly reasoned that the home's placement on an oceanfront lot and separation from the public thoroughfare by a landscape buffer suggest the primary purpose of the structure was to serve as a residence, not as expressive art. Report at 30–31. This is because these elements of the home make it unlikely to be seen by the public. In *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, the Eleventh Circuit explained that while eating a meal is not always expressive, sharing food with others in a public park for the purpose of conveying a message that access to food is a human right can make eating a meal expressive. 2018 WL 4000057, at *1–4. Here, in contrast, the home is not going to be easily seen by the public; instead, it will be in a residential neighborhood, separated from the public thoroughfare by a privacy wall and heavy landscaping. Report at 30. In addition, in *Mastrovincenzo*, the Second Circuit explained that when an object has a non-expressive utilitarian purpose, "courts should exercise greater skepticism in designating such items as 'expressive merchandise.'" 435 F.3d at 95. Thus, Judge Reinhart was correct to consider the fact that Plaintiff's structure would have bedrooms, bathrooms, a garage, laundry room, wine

storage, and a steam room, as these features highlight the non-expressive functions of the home. Report at 30.

Second, Plaintiff asserts that the Report improperly applied *Mastrovincenzo*. Objections at 8. Specifically, Plaintiff claims that the Report did not analyze all of the factors that *Mastrovincenzo* set forth for determining whether an object is expressive, including the amount of decoration, amount of originality, and price paid for the work. *Id*. However, *Mastrovincenzo* did not require courts to consider those factors, rather it stated that "courts *may* gauge the relative importance of the items' expressive character by comparing the prices charged for the decorated goods with the prices charged for similar non-decorated goods." 435 F.3d at 96 (emphasis added). Moreover, *Mastrovincenzo* considered the premium charged by vendors on decorated merchandise, such as hats, relative to prices charged for the item without decoration in evaluating whether the dominant purpose of the merchandise was expressive. *Id.* Here, Judge Reinhart correctly concludes that the dominant purpose of the house was non-expressive based on its location and design. Report 30–31.

Plaintiff further argues that the Report incorrectly concluded that there is not a great likelihood that a reasonable observer would understand the structure to be communicating a message. Objections at 8–9. Plaintiff argues that architectural treatises and law review articles show that architecture is understood as a form of expression. *Id*. at 8-11. These secondary sources are not evidence. At best, they show that architecture in general is perceived as artistic. But the question is not whether architecture generally is considered expressive; it is whether the likelihood is great that a reasonable person observing the structure, in context, would understand it to be communicating some message. *See Johnson*, 491 U.S. at 404. Judge Reinhart properly determined that there is not a great likelihood that a reasonable observer would understand the

structure to be communicating a message, because context shows that the residence is designed to be concealed from the public and it is likely to be perceived as serving predominantly non-expressive functions. *See* Report at 31–32.

In addition, Plaintiff asserts that if "at least some people" understand the message, the reasonable person standard is satisfied. Objections at 9 n.3. But "some people" understanding is not sufficient; the "average" person must. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights. Comm'n*, 138 S. Ct. 1719, 1743 (2018) (Thomas, J., concurring) (explaining that an "average person" would understand that a wedding cake indicates that a wedding has occurred, a marriage has begun, and the couple should be celebrated); *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 568 (1995) (explaining that a "parade" is expressive because it indicates that marchers are making a collective point, "not just to each other but to bystanders along the way").

Finally, Plaintiff contends that the ARCOM Ordinance is content based and compels speech. Objections at 11–12. Judge Reinhart correctly determined that because Plaintiff has not met his initial burden of establishing that his conduct is protected by the First Amendment, the Court need not address whether the Ordinance is content neutral or content-based. Report at 32. Likewise, Plaintiff's compelled speech argument fails because, as set forth above, designing his residential home is not First Amendment protected speech.

### C. Objection Number 3: The Report Erred in Concluding that Section 18-205 is not Void for Vagueness

Plaintiff also argued that Section 18-205 was unconstitutionally vague because it gave ARCOM unbridled discretion. As set forth in the Report, when evaluating a statute for vagueness, courts must determine whether a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited," and whether the statute "provide[s] explicit standards"

to avoid "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "To find a civil statute void for vagueness, the statute must be 'so vague and indefinite as really to be no rule or standard at all.'" *Rectory Park, L.C. v. City of Delray Beach*, 208 F. Supp. 2d 1320, 1331 (S.D. Fla. 2002) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). The Report recommends granting summary judgment for Defendant on the vagueness claim because the Ordinance did not infringe on First Amendment speech and it sets forth criteria for issuing building permits that are sufficiently clear and definite and limit the ARCOM's discretion. Report at 33–36.

Plaintiff raises three argument objecting to the Report's vagueness analysis: the Report (1) errs in finding that the criteria outlined in Section 18-205 are sufficiently clear to withstand a vagueness challenge; (2) incorrectly concludes that the Ordinance does not infringe on constitutionally protected speech; and (3) erroneously determines that Plaintiff only has standing to assert as-applied claims to the portions of Section 18-205 that were the basis of the ARCOM decision.[2]

First, as Judge Reinhart explained, like in *Rectory Park, L.C.*, the criteria outlined in the Ordinance are sufficiently clear and definite to withstand a vagueness challenge. Report at 35. In *Rectory Park, L.C.*, this Court upheld a zoning ordinance that provided that an application for a proposed project could be denied if it was "not compatible … with surrounding development" because it listed standards for determining the permissible density of a particular project. 208 F. Supp. 2d at 1328–30. The standards were "sufficiently clear for persons of common or ordinary

---

[2] Arguments one and two are nearly identical to arguments Plaintiff presented to Judge Reinhart. *Compare* Objections at 12–15, *with* ECF No. [86] at 7–9. "It is improper for an objecting party to submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Kita v. Berryhill*, 2017 WL 3601825, at *2 (S.D. Fla. Aug. 3, 2017) (citing *Marlite, Inc. v. Eckenrod*, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012)). The Court addresses each objection nevertheless.

intelligence to understand their meaning" and constrained the discretion of the decision-makers. *Id.* at 1330. Similarly, here Section 18-205(a)(6) lists specific design elements that cannot be "excessively dissimilar" to other structures within a 200-foot radius, including the "height of building," "architectural compatibility," "arrangement of the components of the structure," and "design that is complimentary with size and massing of adjacent properties." *See* Code § 18-205(a)(6)(a), (c), (d), (f). As in *Rectory Park*, these criteria are sufficiently clear for an ordinary person to understand what the ARCOM prohibits. They also provide parameters that constrain the ARCOM's discretion, preventing arbitrary and discriminatory enforcement. Although Plaintiff asserts that courts have previously held ordinances prohibiting excessive similarity and dissimilarity to be vague, Objections at 14, the sole case cited by Plaintiff, *Pacesetter Homes, Inc. v. Village Of Olympia Fields*, invalidated an ordinance because it was an unlawful delegation of legislative authority, not because it was unconstitutionally vague. 104 Ill. App. 2d 218, 223 (Ill. App. Ct. 1968).

Second, the Court agrees with Judge Reinhart that the Ordinance does not implicate First Amendment expression because, for the reasons explained above, the architectural design for Plaintiff's home is not entitled to First Amendment protection. *See* Report at 34. Thus, the Report correctly applied the "less exacting scrutiny" employed in *Rectory Park* in evaluating the ordinance. *See id.*

Third, the Report properly noted that Plaintiff only has standing to assert an as-applied challenge to the constitutionality of portions of the Ordinance that were applied to him. *See Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.*, 351 F. 3d 1112, 1117 (11th Cir. 2003) (holding plaintiff only had standing to challenge the constitutionality of the portion of the

ordinance under which its billboard permits were denied). Thus, the Court finds Judge Reinhart's Report to be well-reasoned and correct.

### D. Objection Number 4: The Report Improperly Analyzes the Equal Protection Challenge

Plaintiff also claimed that he was denied equal protection because Defendant's "historical applications" of the ARCOM Ordinance have had "anomalous results vis-à-vis the issuance of building permits," allowing "dissimilar structures to be approved and constructed" yet denying Plaintiff's application. Report at 43. As Judge Reinhart explains in the Report, a party asserting that a zoning ordinance has been applied in a manner that violates the equal protection clause "must show (1) that they were treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against Plaintiffs." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). The Report recommends granting summary judgment for Defendant on Plaintiff's equal protection claim because Plaintiff failed to show that he was treated differently than others who were similarly situated. Report at 43–44. The comparators were not similarly situated because they were located in different neighborhoods than Plaintiff's proposed residence and were approved at different times by different ARCOM boards. *Id*. Plaintiff also did not show that the comparators had similar massing, size, and design elements. *Id*.

Plaintiff asserts that the Report errs by: (1) considering arguments that were not raised in Defendant's original Motion; (2) failing to take into account all of the relevant comparators; and (3) determining that the comparators were not similarly situated. Objections at 15–16. The Court is unpersuaded and adopts the Report's recommendation that Plaintiff's equal protection fails because Plaintiff has not shown that he was treated differently than others who were similarly situated.

First, Plaintiff contends that Judge Reinhart should not have considered Defendant's argument that the structures discussed by David Chase in his presentation to the ARCOM were not "similarly situated" because Defendant did not raise that argument in its original motion. Objections at 15. However, Defendant argued that the comparators Plaintiff presented to the ARCOM were distinguishable in its Memorandum of Law in Support of its Motion to Dismiss and/or for Summary Judgment, filed November 22, 2017. ECF No. [22] at 16 ("The record here is complete as to what comparators were cited by Plaintiff and considered by ARCOM in the administrative proceedings. Plaintiff's argument, quite simply, was that the comparators were of a similar 'International [modern] Style' to Plaintiff's proposal and had been approved by ARCOM over the years elsewhere throughout the down…"). Therefore, Defendant timely raised the argument that the comparators presented to the ARCOM were not "similarly situated."

Second, Plaintiff argues that the Report erred by only considering the structures discussed in David Chase's presentation to the ARCOM as comparators, because all houses that ARCOM has reviewed since the "excessively similar" and "excessively dissimilar" criteria were added are relevant comparators. *See* Objections at 15. However, "all ARCOM reviewed houses" cannot be sufficiently similar comparators for Plaintiff's "class of one" equal protection claim. In *Campbell v. Rainbow City*, the Eleventh Circuit explained that for a development to be "similarly situated" to the plaintiff's proposed project, "it must be *pima facie* identical in all relevant respects." 434 F.3d at 1314 ("A showing that two projects [are] similarly situated requires some specificity."); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another."). In *Campbell*, the plaintiffs argued that their equal protection rights were violated when the Planning Commission denied them tentative approval of their

proposed residential building project. 434 F.3d 1306, 1309 (11th Cir. 2006). The court explained that for another development to be similarly situated, it would likewise have to be a plan to develop residential apartments, not a commercial or mixed-use plan; it would have to be essentially the same size, have an equivalent impact on the community, and require the same zoning variances; and it would need to be a project where the developer sought the same form of tentative approval from the city. *Id*. at 1314–16 n.8. Similarly, here, another house reviewed by the ARCOM is not necessarily a structure "similarly situated" — it would have to "be *pima facie* identical in all relevant respects." *Id*. at 1314. Thus, the Report did not err by declining to consider "all ARCOM reviewed houses" as comparators, because the Plaintiff did not show with any specificity why these houses are all similarly situated.

Third, the Report correctly found that the comparators were not "similarly situated" to Plaintiff's proposed residence. Plaintiff argues that being located in different neighborhoods is irrelevant because Section 18-205 applies to all neighborhoods in the Town. Objections at 15. But, the neighborhood of the comparator is relevant because Section 18-205(a)(6) provides that the proposed building should not be "excessively dissimilar" in relation to other structures within a 200-foot radius. Code § 18-205(a)(6). Therefore, what may be "excessively dissimilar" from buildings in one 200-foot radius might not be "excessively dissimilar" in another part of the Town. Plaintiff also asserts that "the massing, size, and design element criteria" of comparators are not relevant. Objections at 16. However, these aspects are highly relevant to determining why they have been permitted by the ARCOM while Plaintiff's proposed residence was not. *See Campbell*, 434 F.3d at 1317 (explaining that a comparator was not similarly situated to plaintiffs' development because it was "smaller than Plaintiffs' much grander design" and "the nature of

the presentations" of the comparator "would inspire more confidence" than the plaintiffs' "rather nonchalant approach").

Finally, Plaintiff argues that comparators can be "similarly situated" even if they were approved at different times by different ARCOM boards because all ARCOM boards have to apply the Ordinance the same way. Objections at 16. The Court agrees with Judge Reinhart's analysis that submitting plans during different time periods can render those comparators not similarly situated. *See Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (explaining that other developments that were developed in different time periods under different circumstances were not similarly-situated to plaintiffs); *Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) ("In the land-use context, timing is critical and thus, can supply an important basis for differential treatment…. Consequently, the most reliable comparisons are likely to be from roughly the same time frame."). And, in any event, the Court also agrees that even if there were a similarly situated comparator, Defendant's application of Section 18-205 to Plaintiff's proposal was rationally related to a legitimate government purpose — the maintenance of community aesthetics. *See* Report at 40, 44; *see also Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1177 (11th Cir. 2018) (holding that plaintiff's right to equal protection was not violation even if plaintiff and comparator were similarly situated because the unequal treatment of the two businesses passes the rational basis test).

Therefore, the Court adopts Judge Reinhart's recommendation that Defendant is entitled to summary judgment on the equal protection claim.

## IV.     CONCLUSION

Upon review, the Court finds Judge Reinhart's Report and Recommendation to be well-reasoned and correct. The Court agrees with the analysis in Judge Reinhart's Report and

Recommendation and concludes that Defendant's Motion to Dismiss and/or for Summary Judgment must be granted.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Judge Reinhart's Report and Recommendation, **ECF No. [93]**, is **ADOPTED**;

2. Defendant's Motion to Dismiss and/or for Summary Judgment, **ECF No. [21]**, is **GRANTED**;

3. Plaintiff's Objections, **ECF No. [96]**, are **OVERRULED**;

4. To the extend not otherwise disposed of, all pending motions are **DENIED** as moot;

5. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of September, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

The Honorable Bruce E. Reinhart

Counsel of Record